**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No.

BRYAN MOTT, a New York Citizen; and NIKKI MOTT, a New York Citizen,

      Plaintiffs.

v.

NARCONON FRESH START d/b/a A Life Worth Saving, Inc., ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL; and NARCONON INTERNATIONAL,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiffs Bryan and Nikki Mott ("Plaintiffs"), through counsel, Ryan Hamilton of Hamilton Law, LLC, and Daniel Lipman of Parker Lipman, LLP, allege the following:

**I.**

**PARTIES**

1. Plaintiffs Bryan and Nikki Mott were, and at all relevant times to this Complaint are, residents of New York.

2. Defendant Narconon Fresh Start d/b/a A Life Worth Saving (hereafter "Fresh Start"), is, and at all times relevant to this Complaint was, a corporation incorporated under the laws of, and with its principal place of business in, the State of California. Fresh Start has been at all relevant times transacting business in Fort Collins, Larimer County, Colorado. Fresh Start may be served

with process through its registered agent, Mark Kirwin, 4480 Market St., Ste. 804, Ventura, CA 93003.

3. Defendant Narconon International ("NI") is a California corporation with its headquarters in Los Angeles, California.

4. NI is the parent/licensor of Defendant Narconon Fresh Start. NI exercises control over the time, manner, and method of Fresh Start's operations.

5. NI was doing business in the State of Colorado by and through its agent and subsidiary/licensee Defendant Narconon Fresh Start. NI may be served with process through its registered agent, Sherman D. Lenske, 6400 Canoga Ave., Suite 315, Woodland Hills, CA 91367.

6. Fresh Start and NI are subsidiaries of the Association for Better Living and Education ("ABLE"). ABLE oversees the drug rehabilitation, education, and criminal justice activities of the Church of Scientology including, but not limited to, Fresh Start and NI.

7. Defendant ABLE is a corporation registered in the State of California with its headquarters in Los Angeles, California.

8. ABLE controls the time, manner, and method of NI's and Fresh Start's businesses by actively managing their daily operations, including conducting inspections of Narconon centers and creating, licensing, and approving their marketing materials.

9. ABLE transacts business in the State of Colorado by and through its agents, Narconon International and Narconon Fresh Start. ABLE may be served with process through its registered agent, Sherman D. Lenske, 6400 Canoga Ave., Suite 315, Woodland Hills, CA 91367.

## II.

## JURISDICTION AND VENUE

10. This Court has subject jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, and there is complete diversity between the parties.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the events and omissions giving rise to this lawsuit occurred in this District, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

## III.

## FACTUAL ALLEGATIONS

12.     On or about May 14, 2012, Plaintiff Bryan Mott was searching the Internet for help in finding an appropriate drug rehabilitation facility for his daughter, Plaintiff Nikki Mott. Bryan found what he believed to be an independent website that purported to provide help finding an appropriate drug rehabilitation facility.

13.     Bryan called a 1-800 number provided by this website, and an "independent consultant" referred him to Fresh Start. Soon after, Bryan spoke with Fresh Start Admissions Director, Dan Carmichael.

14.     Mr. Carmichael told Bryan that in contrast to other rehabilitation programs, the Fresh Start program had a 72% success rate. Mr. Carmichael explained that the Fresh Start program is so effective because its sauna and vitamin program, the New Life Detoxification Program, makes patients sweat out residual drug toxins in the cells. These residual drug toxins, Carmichael claimed, are what cause drug cravings.

15.     Mr. Carmichael represented that the New Life Detoxification Program had been scientifically and medically proven to be effective.

16.     Mr. Carmichael further represented to Bryan: (1) that his daughter, Plaintiff Nikki Mott, would be under the care of a doctor or nurse; (2) that Narconon would provide Nikki with extensive drug and addiction counseling; and (3) that Narconon staff are properly trained to care for and treat persons with addiction.

17.     Mr. Carmichael also directed Bryan to Narconon Fresh Start's website for its facility in Fort Collins, Colorado, www. narcononcolorado.org. This website claims that Narconon Colorado

has a 76% "success rate." The website further claims that the cornerstone of the program is its "Sauna Based Detox" which the website describes as "[a]n exact program of medically supervised exercise, dry sauna sweating and vitamins, [sic] rid fatty tissues of [drug] residues."

18. Based on these representations, Bryan agreed to send his daughter to Fresh Start on or about May 15, 2012.

19. Bryan paid Narconon $33,000 to provide his daughter substance abuse treatment. **Exhibit A**, Invoice from Narconon Fresh Start.

20. On entering the program, Nikki was examined by a medical doctor the day she arrived at the facility. She did not see a doctor or other medical professional during her remaining time in the facility.

21. Narconon had Nikki stop taking the anti-depressant medication she was on "cold turkey." Nikki had been taking the medication for ten years.

22. Nikki went through went through withdrawal at Narconon without being supervised by any medical personnel.

23. After Nikki completed withdrawal, she began the Narconon treatment program that Fresh Start offers.

24. Fresh Start's treatment program consisted of having Nikki read books written by, or based on the works of, L. Ron Hubbard.

25. The books in the program teach Scientology doctrines and concepts that beginning Scientologists study.

26. In addition, Fresh Start had Nikki undergo its sauna program.

27. Under its sauna program, Fresh Start had Nikki sit in a sauna for up to six hours per day for five weeks. Fresh Start also instructed Nikki to ingest dangerous amounts of Niacin as part of the sauna program.

28.     The sauna program Fresh Start had Nikki undergo is a Scientology ritual known as the "Purification Rundown." Fresh Start calls the sauna program the "New Life Detoxification Program."

29.     Under the New Life Detoxification program, students first exercise vigorously before entering the sauna each day. On entering the sauna, Fresh Start requires each student to ingest increasing doses of Niacin and a "vitamin bomb." Fresh Start increased Nikki's dosages of Niacin well beyond the recommended daily allowance.

30.     There were no medical personnel such as doctors or nurses overseeing Nikki during the sauna program.

31.     Fresh Start claims that its sauna program has been scientifically shown to flush out residual drug toxins stored in fatty tissue thereby reducing or eliminating a person's drug cravings.

32.     Not only does the New Life Detoxification fail to live up to Fresh Start's claims about its benefits, the sauna program is dangerous. By having students ingest extreme doses of Niacin and other vitamins while sitting in extreme temperatures for hours, the sauna program unnecessarily exposes students to serious health risks including severe dehydration.

33.     In a prior lawsuit, Dr. Louis A. Casal, an expert **retained by** Narconon International and Narconon of Northern Georgia in a wrongful death suit filed against those entities, testified at his deposition. The relevant portions of Dr. Casal's deposition testimony are attached hereto as **Exhibit B.** When asked under oath about the New Life Detoxification sauna program – the same sauna program at issue in this case – he testified that there is no scientific basis for the notion that sweating in a sauna detoxifies a person's body or treats addiction:

    Q.     Have you looked at the Narconon literature on what Narconon contends the benefits from the sauna are?

    A. [Dr. Casal]  Yes, I have.

Q. And the sauna program, what Narconon contends is that in – it in fact detoxifies your body. True?

A. True.

Q. But there's no scientific basis that you can point me to to support that contention, is there, sir?

A. You're correct.

Q. So when Narconon states that the sauna program detoxifies its students, you're not aware, as a medical doctor, of any scientific basis for that contention?

A. I agree.

Exhibit B, Deposition of Dr. Louis Casal, 136: 21 – 137:9.

34. Despite their own expert's admission that there is no scientific basis for the idea that patients sweating in the New Life Detoxification Program treats addiction, Defendants continue to represent to prospective patients, as they did to Plaintiffs, that the New Life Detoxification has been "scientifically and medically proven" as effective.

35. Narconon claims a success rate of over 70% for all Narconon centers, including Narconon Fresh Start d/b/ A Life Worth Saving. Narconon has published no studies or other verifiable evidence to support their claimed success rates.

36. Dr. Casal, the medical expert retained by Narconon International in another lawsuit, testified at his deposition that he was not convinced Narconon's claimed success rate was true:

Q. Okay. What are you relying on – well, let me ask you this; do you believe that 76 percent success ratio is accurate?

A. [Dr. Casal].  Mr. Harris, I'll be honest with you, that's a big number.

Q. Yeah, it's -- it's a real big number.

A. It's a big number.

Q. And it's completely inconsistent –

6

      A.      I – I hope it's true, but, I mean, I would need some convincing.

…

      Q.      Okay. Do you have any idea where Narconon is getting the numbers that it's using?

      A.      You know, in the interest of time – I just didn't have enough time to delve deeper into those studies, Mr. Harris. And I – I would be happy to, but, no, I don't have a clear understanding of where that 70 – 70-something number came from, no, sir.

Exhibit B, Deposition of Dr. Louis Casal, 124:21 – 125:5; 126:1 – 7.

37.      Defendants are well aware that there is no support for Narconon Fresh Start's claimed success rate, but nonetheless advertised a more than 75% success rate to Charles Matthys.

38.      Narconon documents indicate that the Narconon program is used to recruit patients into the Church of Scientology. For example, a Narconon document titled the "Narconon Technical Line-Up" provides a flow chart of a patient's experience into and through the Narconon program. The document shows that when a patient finishes the Narconon program, the patient is to be "route[d] to the nearest Org for further services if the individual so desires." "Org" is Scientology jargon for an individual church providing services for the Church of Scientology. A copy of the "Narconon Technical Line-up" is attached hereto as **Exhibit C**.

39.      Defendants consider the Narconon program to be the "Bridge to the Bridge." That is, Narconon considers its program to be an initial step into getting on Scientology's "Bridge to Total Freedom," the key spiritual journey that practitioners of the Scientology religion undertake. See, e.g., "Narconon News, 1974, Volume 6, Issue 3: Narconon Is The Bridge to The Bridge," attached hereto as **Exhibit D**.

40.      Despite Fresh Start's representations that Nikki would receive counseling, at no point did Narconon staff ever speak to Nikki about the specifics of her life or her drug use and its causes. In fact, no one at Fresh Start ever spoke to Nikki about her substance abuse at all.

41.      Instead, counselors at Fresh Start attempted to treat Nikki using only Scientology.

42. Nikki left the Narconon program without receiving any actual drug abuse treatment or counseling. On leaving the program she quickly relapsed.

43. In addition, Nikki suffered psychological injuries resulting from her time at Fresh Start. She has been forced to seek treatment to deal with the injuries she sustained at Fresh Start.

## ALTER EGO LIABILITY

44. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

45. Defendants Narconon Fresh Start and NI have all appearances of being a corporate sham illusion and mere instrumentalities of Defendant ABLE.

46. ABLE heavily influences Narconon Fresh Start and NI and governs and controls nearly every aspect of their business activities.

47. There is such unity of interest and ownership among Narconon Fresh Start, NI, and ABLE that they are inseparable from one another.

48. The separate corporate existences of Narconon Fresh Start, NI, and ABLE is a design or scheme to perpetrate a fraud. The separate corporate existences of Narconon Fresh Start, NI, and ABLE is a scheme to fraudulently induce patients to enroll in one of their treatment facilities and pay substantial funds. Further, Defendants perpetrate this scheme to recruit for and promote the Scientology religion.

49. It is interests of justice to disregard the corporate shield and treat Defendants Narconon Fresh Start, NI, and ABLE as identical. Accordingly, each cause of action listed below is made against all Defendants.

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

50. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

51.     Defendants contracted with Bryan Mott provide Nikki Mott secular drug and alcohol treatment.

52.     As consideration, Plaintiff Bryan Mott paid Defendants $33,000.00.

53.     Defendants breached this contract by, *inter alia*: (i) failing to provide services constituting drug and alcohol treatment; and (ii) providing Scientology in lieu of drug and alcohol treatment.

54.     Defendants' breaches have caused Plaintiffs to suffer damages in excess of $75,000.00.

## SECOND CLAIM FOR RELIEF

### FRAUD

55.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

56.     The following is a non-exhaustive list of false representations Defendants knowingly made to the Plaintiffs: (i) that the Narconon program has more than a 72% success rate; (ii) that Nikki Mott would receive counseling related to substance abuse at Fresh Start; (iii) that the New Life Detoxification sauna program is safe and has been scientifically shown to eliminate or reduce drug cravings; and (iv) that Plaintiff Nikki Mott would be under the care of a doctor or nurse at Fresh Start.

57.     Fresh Start employee Dan Carmichael made these representations to Bryan Mott on or about May 14, 2012, with the intent that they be acted upon.

58.     Plaintiffs did not know that these statements were false.

59.     As a proximate result Plaintiffs' reliance on Defendants' false representations, Plaintiffs have sustained damages in excess of $75,000.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT CONCEALMENT

60.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

61. Defendants' representative Dan Carmichael intentionally concealed material facts to Bryan Mott when persuading Bryan to admit Nikki to Fresh Start. The facts he failed to disclose include the fact the Narconon treatment program consists of the works of L. Ron Hubbard, the founder of Scientology. Further, Carmichael concealed the fact that patients in the Narconon program are instructed to practice and study the same materials as beginning Scientologists.

62. Bryan Mott was unaware of these facts when speaking to Defendants' representatives about obtaining drug treatment for his daughter.

63. Representative Carmichael intentionally concealed these facts because he knew that Bryan Mott would not admit his daughter to Fresh Start if he knew these facts.

64. As result of Defendants' concealment of these material facts, Plaintiffs have suffered injuries in excess of $75,000.

## FOURTH CLAIM FOR RELIEF

### NEGLIGENCE

65. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

66. Defendants owed Plaintiffs a duty to render substance abuse treatment to Nikki Mott in a manner that did not subject her to an unreasonable risk of harm.

67. Defendants breached these duties by: (i) instructing Nikki to sit in a sauna for 6 hours per day for five weeks while ingesting extreme dosages of Niacin and other vitamins; (ii) failing to staff the Fresh Start treatment facility, and particularly the sauna, with any qualified medical personnel; (iii) failing to provide duly qualified counselors to administer treatment; and (iv) providing Scientology in lieu of substance abuse treatment.

68. As a proximate result of Defendants' breaches of the above duties, Plaintiffs have suffered injuries in excess of $75,000.00.

## FIFTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

70.     Defendants engaged in extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing Nikki Mott severe or extreme emotional distress.

71.     Defendants' extreme and outrageous conduct consisted of, *inter alia*: (i) providing Nikki Mott Scientology in lieu drug treatment or substance abuse counseling; and (ii) preying on Plaintiffs' vulnerabilities and attempting to recruit Nikki Mott into Scientology under the guise of providing drug treatment.

72.     As a proximate result of Defendants' extreme and outrageous conduct, Nikki Mott has suffered severe and extreme emotional distress way beyond what any person in a civilized society should be expected to endure.

## SIXTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

73.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

74.     On or about May 14, 2012, Defendants, through Fresh Start employee Dan Carmichael, made the following false representations of fact to Bryan Mott: (i) that the Narconon program has more than a 72% success rate; (ii) that Nikki Mott would receive counseling related to substance abuse at Fresh Start; (iii) that the New Life Detoxification sauna program is safe and has been scientifically shown to eliminate or reduce drug cravings; and (iv) that Plaintiff Nikki Mott would be under the care of a doctor or nurse at Fresh Start.

75.     Defendants made these statements to Bryan Mott without exercising reasonable care.

11

76. Defendants made these statements to guide Bryan Mott in his business transaction with Defendants.

77. Defendants knew that Bryan Mott would rely on these representations of fact.

78. Bryan Mott relied on these false representations of fact to his detriment and Plaintiffs have suffered injuries in excess of $75,000.

## SEVENTH CLAIM FOR RELIEF

## CLAIM UNDER COLORADO CONSUMER PROTECTION ACT, C.R.S.A. § 6-1-105

79. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

80. Defendants engaged in unfair or deceptive trade practices by knowingly making false representations of fact to Bryan Mott.

81. On or about May 14, 2012, Defendants knowingly made the following false representations to Bryan Mott, both through its representatives and on its website: (i) that the Narconon program has a 76% success rate; (ii) that Nikki Mott would receive counseling related to substance abuse at Narconon; (iii) that Narconon's sauna program is safe and has been scientifically shown to eliminate or reduce drug cravings; and (iv) that Nikki Mott would be under the care of a doctor or nurse at Fresh Start.

82. Defendants made these false representations in the course of its business to induce Bryan Mott to admit his daughter to Fresh Start.

83. Defendants' unfair or deceptive trade practices complained of herein significantly impact the public. Defendants have deceived numerous other consumers using these same practices. Consumers seeking drug rehabilitation services for their loved ones such as Plaintiff Bryan Mott are often in an urgent and vulnerable situation. Consequently, they often are left with relatively little bargaining power in their transactions with Defendants. Defendants' deceptive trade practices

have the potential to impact adversely numerous consumers seeking drug rehabilitation services in the future.

84.     As a consequence of Defendants' unfair or deceptive trade practices, Plaintiffs have suffered damages in excess of $75,000. Plaintiffs are entitled to all damages recoverable under the Colorado Consumer Protection Act, including without limitation, treble damages and attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

## CIVIL RICO FOR MAIL AND WIRE FRAUD, 18 U.S.C. § 1964(c)

85.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

86.     Plaintiffs have been injured by Defendants' conduct of an enterprise through a pattern of racketeering activity.

87.     Defendants have engaged in a scheme to defraud Plaintiffs and countless others. In furtherance of that scheme, Defendants have committed countless acts of mail fraud and wire fraud under 18 U.S.C. § 1962 within the preceding ten years.

88.      Defendants perpetrate this scheme as follows: When prospective patients or their loved ones are referred to Narconon, they then speak to an intake specialist. The intake specialist – following a script – makes claims that Defendants know to be false and without scientific support such as the claims that Dan Carmichael made to Bryan Mott in this case on or about May 12, 2012. These false claims include: (i) that Fresh Start has a more than 76% success rate; (ii) that the New Life Detoxification sauna program reduces or eliminates drug cravings by eliminating toxins from an addict's fatty tissue; (iii) that patients at Fresh Start will receive extensive drug counseling; (iv) that the Narconon treatment program Fresh Start offers does not involve any religion; and (v) that patients at Fresh Start will be under the supervision of licensed physicians and other medical personnel.

89. Defendants also mail prospective clients such as Plaintiffs pamphlets making these same false claims to induce them to enter into the program. Defendants refer prospective patients to its website where these false claims are also made. NI and ABLE approve Narconon Fresh Start's marketing materials and representative's scripts that contain these false claims.

90. As was the case here, Defendants often recruit prospective clients from different states in which the facility is located. For that reason, Defendants' use of the phones, wires, mail, and internet is integral to their fraudulent scheme.

91. While a patient is undergoing the program, Defendants prepare the patient to become a Fresh Start staff member following the patient's completion of the program. In doing so, the patient becomes a counselor for the next wave of incoming patients. This scheme allows Defendants to pay a patient-turned-counselor low wages and Defendants are spared the relatively higher cost of paying duly qualified addiction counselors.

92. In addition, Defendants use their treatment program as a recruiting tool for the Church of Scientology, as evidenced by Defendants' own documents, attached hereto as Exhibits C and D.

93. As a result of Defendants' racketeering activity, Plaintiffs have suffered pecuniary damages and other injuries in excess of $75,000.00.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A. Judgment in favor of Plaintiffs and against Defendants for damages in such amounts as may be proven at trial;

B. Compensation for special, general, and treble damages;

C. Reasonable attorney's fees and costs of suit;

D. Interest at the statutory rate;

E. Punitive or exemplary damages against Defendant;

F. All further relief, both legal and equitable, that the Court deems just and proper.

DATED this 7th day of May, 2014.

Respectfully submitted,

By: *[signature]*

RYAN A. HAMILTON, ESQ.
NV BAR NO. 11587
HAMILTON LAW
5125 S. Durango Dr., Ste. C
Las Vegas, NV 89113
(702) 818-1818
(702) 974-1139
ryan@hamiltonlawlasvegas.com

*Attorney for Plaintiffs*