IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01293-PAB-KMT

BRYAN MOTT, a New York citizen, and
NIKKI MOTT, a New York citizen,

    Plaintiffs,

v.

NARCONON FRESH START, d/b/a A Life Worth Saving, Inc.,

    Defendant.

_____

# ORDER
_____

This matter comes before the Court on the Motion to Dismiss the First, Fifth, Seventh and Eighth Causes of Action in Plaintiffs' Second Amended Complaint [Docket No. 34] filed by defendant Narconon Fresh Start d/b/a/ A Life Worth Saving, Inc. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND[1]

Defendant operates a drug rehabilitation facility in Fort Collins, Colorado (the "Colorado facility"). Narconon International is defendant's parent company and controls the time, manner, and method of defendant's operations. Docket No. 30 at 2, ¶ 4. In May 2012, plaintiff Bryan Mott searched the internet for a drug rehabilitation facility for his daughter, plaintiff Nikki Mott, and, as a result, contacted defendant. *Id.* at 3, ¶ 12. Mr. Mott spoke with defendant's Admissions Director, Dan Carmichael, who told Mr.

---

[1]The following factual allegations are taken from plaintiffs' second amended complaint [Docket No. 30] and are presumed true for the purposes of resolving this motion.

Mott that defendant's Fresh Start drug rehabilitation program (the "rehabilitation program") had a 72% success rate because of a sauna and vitamin program.  *Id.* at 3, ¶¶ 13-14.  Mr. Carmichael represented that the rehabilitation program was scientifically and medically proven to be effective, that Ms. Mott would be under the care of a doctor or nurse, that defendant would provide Ms. Mott with extensive drug and addiction counseling, and that defendant's staff are properly trained to care and treat persons with addiction.  *Id.* at 3, ¶¶ 15-16.  Mr. Mott also visited defendant's website, which represented that the Colorado facility had a 76% success rate and that the rehabilitation program's success was due to "Sauna Based Detox" – "[a]n exact program of medically supervised exercise, dry sauna sweating and vitamins, [sic] rid fatty tissues of [drug] residues."  *Id.* at 3-4, ¶ 17.  Based upon these representations, on May 15, 2012, Mr. Mott paid defendant $33,000 to provide Ms. Mott with substance abuse treatment at the Colorado facility.  *Id.* at 4, ¶¶ 18-19; *see also id.* at 19.

Upon arriving at the Colorado facility, Ms. Mott was examined by a medical doctor, but did not see doctors or other medical professionals for the remainder of her time at the facility.  *Id.* at 4, ¶ 20.  Defendant had Ms. Mott stop taking her anti-depressant medication, causing Ms. Mott to experience withdrawal symptoms without medical supervision.  *Id.* at 4, ¶¶ 21-22.

Once Ms. Mott began the rehabilitation program, she was required to read the works of L. Ron Hubbard, which taught Church of Scientology concepts and practices.  *Id.* at 4, ¶¶ 23-25.  In addition, as part of the rehabilitation program, Ms. Mott was required to undergo a Scientology ritual known as the "Purification Rundown" or, as

defendant referred to it, the "New Life Detoxification Program." *Id.* at 5, ¶ 28. This involved exercising vigorously each day, followed by up to six hours per day in a sauna for a period of five weeks. *Id.* at 4-5, ¶¶ 27, 29. Each participant is also required to ingest increasing doses of niacin and a "vitamin bomb." *Id.* Defendant increased Ms. Mott's dosages of niacin beyond the recommended daily allowance. *Id.*

Despite defendant's representations to the contrary, Ms. Mott did not receive counseling from Colorado facility staff regarding her substance abuse. *Id.* at 7, ¶ 40. Rather, Colorado facility counselors treated Ms. Mott using Scientology. *Id.* at 7, ¶ 41. Ms. Mott left the rehabilitation program without receiving any actual drug abuse treatment or counseling, suffered psychological injuries as a result of her participation in the rehabilitation program, and was forced to seek additional treatment. *Id.* at 8, ¶¶ 42-43. She suffered a relapse shortly after leaving the rehabilitation program. *Id.*

Defendant claims that the New Life Detoxification Program has been scientifically shown to flush out residual drug toxins stored in fatty tissues, which reduces or eliminates a person's drug dependency. *Id.* at 5, ¶ 31. However, by requiring participants to ingest extreme doses of niacin and other vitamins and sit in a sauna for hours, defendant unnecessarily exposes participants to serious health risks including severe dehydration. *Id.* at 5, ¶ 32. Dr. Louis Casal, an expert retained in a different lawsuit against defendant's parent company Narconon International and Narconon of Northern Georgia, testified that there was no scientific basis for the claims in Narconon literature that the sauna program detoxifies the body. *Id.* at 5-6, ¶ 33. Defendant continues to represent to prospective patients that the New Life

Detoxification Program has been proven "scientifically and medically" effective. *Id.* at 6, ¶ 34.

Narconon International claims that its facilities have a success rate of over 70%, but has no published studies or other evidence to support such a claim. *Id.* at 6, ¶ 35. Dr. Casal testified that he did not have a clear understanding of the source of Narconon International's claimed success rate. *Id.* at 6-7, ¶ 36. Despite being aware that such claims have no support, defendant advertised to Mr. Mott that its rehabilitation program had a success rate of more than 75%. *Id.* at 7, ¶ 37.

Narconon International documents indicate that the rehabilitation program is used to recruit participants into the Church of Scientology. *Id.* at 7, ¶ 38. Defendant considers the rehabilitation program to be the "Bridge to Bridge," which is an initial step in a spiritual journey that Church of Scientology members undertake. *Id.* at 7, ¶ 39.

On May 7, 2014, plaintiffs filed this case against defendant, Association for Better Living and Education International, and Narconon International. Docket No. 1. On July 2, 2014, plaintiffs filed the second amended complaint. Docket No. 30.[2] On July 31, 2014, plaintiffs voluntarily dismissed Association for Better Living and Education International and Narconon International from the case. Docket No. 45.

Plaintiffs bring claims against defendant for breach of contract, fraud, fraudulent concealment, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent misrepresentation, violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105, violation of the Racketeer

---

[2]All references to the "complaint" are to the second amended complaint [Docket No. 30] unless otherwise indicated.

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and unjust enrichment. Docket No. 30 at 9-16.

On July 15, 2014, defendant filed the present motion, arguing that plaintiffs have failed to state a claim for breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of the CCPA, and violation of RICO. Docket No. 34. Plaintiffs filed a response brief [Docket No. 47] and a notice of supplemental authorities [Docket No. 53]. Defendant filed a reply brief [Docket No. 49].

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting

all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

## III. ANALYSIS

### A. Breach of Contract

The elements of a breach of contract claim under Colorado law are: (1) the existence of a contract; (2) performance by the claimant or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the claimant. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).[3]

Defendant argues that plaintiffs have failed to allege the existence of a contract. Docket No. 34 at 4. Plaintiffs respond that the complaint sufficiently sets forth the promises defendant made to Mr. Mott. Docket No. 47 at 4. "In order to establish the existence of a contract, the evidence must show that the parties agreed upon all essential terms." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986). Here, based upon the representations by defendant through Mr. Carmichael and its website and the fact that the parties exchanged valuable consideration in the form of Mr. Mott's payment and defendant providing services to Ms. Mott, there are sufficient facts upon which to conclude that the parties entered into an agreement, the material terms of which were that defendant's rehabilitation program would provide

---

[3]The parties appear to agree that Colorado law applies to the breach of contract claims in this case. The Court will operate under the same premise. *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

Nikki Mott secular drug and alcohol treatment that was scientifically and medically proven to be effective and that Ms. Mott would be under the care of doctors, nurses, and staff trained to care for and treat person with addiction.  *See* Docket No. 30 at 3-4, ¶¶ 15-16; *id.* at 9, ¶ 51.

Defendant argues that the complaint does not identify the terms of the contract that were allegedly breached.  Docket No. 34 at 3.  Plaintiffs respond that the complaint alleges that defendant failed to provide Ms. Mott with drug and alcohol treatment and failed to provide care from medical professionals and staff trained to treat addiction.  Docket No. 47 at 5.  The Court agrees with plaintiffs.  Plaintiffs claim that they contracted with defendant to provide Ms. Mott with secular drug and alcohol treatment, but that defendant breached the contract by failing to provide drug and alcohol treatment services and by providing Church of Scientology teachings in lieu of drug and alcohol treatment.  Docket No. 30 at 9, ¶¶ 51-53.  The complaint alleges that defendant's rehabilitation program was ineffective and, rather than being medically or scientifically supported, was based upon religious doctrine.  *Id.* at 5-7.  Moreover, the complaint alleges that, after the first day, Ms. Mott was not under the care of medical professionals during her time in the rehabilitation program.  *Id.* at 4, ¶ 20.  Plaintiffs have sufficiently identified the terms of the contract allegedly breached.

Defendant argues that, because the complaint alleges that "Defendants contracted with Bryan Mott," Ms. Mott lacks standing to pursue a breach of contract claim.  Docket No. 34 at 4.  Plaintiffs respond that Ms. Mott is a third-party beneficiary to the contract and, as a result, may bring a claim to enforce the contract's obligations.  Docket No. 47 at 4.  Persons who are not parties to an express contract may "bring an

action on the contract if the parties to the agreement intended to benefit the nonparty, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." *Harwig v. Downey*, 56 P.3d 1220, 1221 (Colo. App. 2002). The intent to benefit the nonparty "must be apparent from the terms of the agreement, the surrounding circumstances, or both." *Id.* Here, the agreement's intent to benefit Ms. Mott is apparent: the sole purpose of the agreement between Mr. Mott and defendant was to provide substance abuse treatment to Ms. Mott. *See* Docket No. 30 at 4, ¶ 19. Ms. Mott is therefore a third-party beneficiary of the agreement between Mr. Mott and defendant and, as a result, is entitled to bring a breach of contract claim against defendant. *See Harwig*, 56 P.3d at 1221.

This aspect of defendant's motion to dismiss is denied.

### B.  Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, plaintiff must show that "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 966-67 (Colo. App. 2009). Defendant argues primarily that plaintiffs fail to allege the first element.

"'Outrageous conduct' is defined as conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994) (quoting *Destefano v. Grabrian*,

763 P.2d 275, 286 (Colo. 1988)).

> However, [c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority over the other, or the power to affect the other's interests. Conduct may also become outrageous where the defendant proceeds though he knows that the plaintiff is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. Nevertheless, in both scenarios, a defendant is still not liable for mere insults, indignities, or annoyances that are not extreme or outrageous.

*Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 990-91 (Colo. App. 2011) (quotations and citations omitted) (citing *Jones v. Muskegon Cnty.*, 625 F.3d 935, 948 (6th Cir. 2010) (holding that prison nurses' disregard of inmate's requests for medical attention for several months because nurses thought inmate was "faking it" was not outrageous conduct)).

Plaintiffs argue that defendant had authority over Ms. Mott and knowledge that, by undergoing a withdrawal from drugs, she was particularly susceptible to emotional distress. Docket No. 47. Even assuming that these facts could be inferred from the complaint, which defendant disputes, it is not clear that defendant's status or knowledge "exacerbated the conduct" at issue. *Cf. Zlanis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo. App. 1982). Moreover, plaintiffs do not allege sufficient facts or otherwise explain why defendant's conduct rises to the level of extreme or outrageous. Plaintiffs argue that defendant acted outrageously by "trying to indoctrinate [Ms. Mott] into Scientology instead of providing her actual treatment[, which] included having Nikki participate in a dangerous Scientology ritual known as the 'Purification Rundown' in which she was required to ingest extreme doses of Niacin while sitting in a sauna several hours per day." Docket No. 47 at 7. The fact that defendant failed to

provide the agreed upon treatment program, but instead provided Ms. Mott only with religious teachings or Scientology recruitment that "did not even deal with substance abuse" and were ultimately unsuccessful does not rise to the level of extreme or outrageous conduct. Docket No. 47 at 8. At most it establishes that Ms. Mott did not receive the treatment her father bargained for. The fact that defendant directed Ms. Mott to ingest niacin and sit in a sauna for several hours each day without medical supervision is not, without more, extreme conduct.[4] *Cf. Reigel*, 292 P.3d at 992 ("Though she and the other employees may have failed to monitor Mr. Reigel adequately or to recognize that his symptoms required immediate treatment, reasonable persons could not conclude that this conduct rose to the level of being atrocious[] and utterly intolerable in a civilized community."). Thus, plaintiffs fail to state a claim that the defendant engaged in extreme and outrageous conduct.[5] This aspect of defendant's motion to dismiss is granted.

---

[4]Although plaintiffs' arguments rely in part on facts outside the complaint, plaintiffs do not articulate a basis upon which the Court could appropriately consider such facts. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[5]Although defendant raised only briefly the issue of whether plaintiffs' allegations established that defendant acted recklessly or with intent, Docket No. 34 at 4, plaintiff fails to explicitly address this element. The Court is not convinced that plaintiffs have stated a claim that defendant acted intentionally or recklessly to cause Ms. Mott emotional distress. Plaintiffs' allegations that defendant acted intentionally, Docket No. 30 at 11, ¶ 70, are conclusory and not entitled to the presumption of truth. *See Iqbal*, 556 U.S. 679. Plaintiff does not identify any allegations upon which intent or recklessness could be inferred. For example, the mere fact that defendant may have known that there was no scientific basis for its sauna-based rehabilitation program does not establish that defendant acted recklessly with knowledge that there was a substantial probability that its rehabilitation program would cause severe emotional distress. *See Culpepper*, 877 P.2d at 883.

### C. Negligent Infliction of Emotional Distress

To prevail on a claim for negligent infliction of emotional distress, plaintiff must show that "defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011).

Defendant argues that Ms. Mott fails to allege that she sustained physical injury. Docket No. 47 at 13. Plaintiffs do not directly respond to defendant's argument, except to argue that Ms. Mott was "subjected[] to an unreasonable risk of bodily harm by having her go through drug withdrawal and having her ingest extreme doses of Niacin while sitting in a sauna for five hours per day without any medical supervision. As a result, Nikki suffered severe emotional distress." Docket No. 47 at 14. In order to prevail on a claim for negligent infliction of emotional distress, plaintiff must show that he or she "sustained physical injury or was in the 'zone of danger.'" *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 880 n.3 (Colo. 1994). Plaintiff must also show that any physical injury or long-continued emotional disturbance "was caused by her fear for her own safety." *Scharrel v. Wal-Mart Stores, Inc.*, 949 P.2d 89, 93 (1997). Plaintiffs provide no facts upon which to infer that Ms. Mott feared for her own safety while in defendant's rehabilitation program or that it was this fear, rather than other things, that caused her physical injury or emotional distress. As a result, plaintiffs have failed to state a claim for negligent infliction of emotional distress. This aspect of defendant's

motion to dismiss is granted.[6]

### D. CCPA

Under the CCPA, a plaintiff bringing a private claim for relief must show:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006). Plaintiffs must satisfy "the heightened pleading requirements [of] Rule 9(b) to prove a deceptive or unfair trade practice." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120-21 (D. Colo. 2011). Defendants argue that plaintiffs have failed to allege the third and fifth elements.

Defendant argues that plaintiffs fail to establish the third element because Mr. Carmichael's representations to Mr. Mott were not made to the public at large and because plaintiffs have failed to allege details regarding defendant's public misrepresentations. Docket No. 34 at 7. In order to establish the third element of a CCPA claim, plaintiff must show that the challenged practice "significantly impact[s] the public as actual or potential consumers of the defendant's goods, services, or property." *See Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998). Courts consider at least three factors when evaluating public impact:

---

[6]To whatever extent Mr. Mott attempts to assert a claim of his own for negligent infliction of emotional distress, he fails to satisfy the requisite elements. *Draper*, 282 P.3d at 497 (holding that direct effect on plaintiff is requirement; witnessing injury to a loved one is insufficient).

12

> (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

*Crowe*, 126 P.3d at 208.  Public impact may be shown by reference to misrepresentations that are directed to the market generally in the form of advertisements.  *Hall*, 969 P.2d at 235.  However, the CCPA does not provide a remedy for wrongs purely private in nature.  *Crowe*, 126 P.3d at 208.

The Court agrees with defendants that Mr. Carmichael's representations were made only to Mr. Mott and cannot therefore form the basis of a CCPA claim; the complaint does not otherwise allege that Mr. Carmichael made these same representations to members of the public at large.  *See* Docket No. 30 at 3, ¶¶ 13-16.  However, the complaint alleges that defendant made false claims through its website to the public at large, which included claims that the rehabilitation program has a 76% success rate, can remove drug residues that cause drug cravings and relapse, and is not based on religion.  Docket No. 30 at 12-13, ¶ 84; *id.* at 3-4, ¶ 17.  Although the complaint does not indicate that a precise number of consumers have been or will be affected by the representations made on defendant's website, misrepresentations that are "directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers" have been found to satisfy this element.  *See Hall*, 969 P.2d at 235.  The complaint suggests that defendant's website is directed to the general public, as further evidenced by the fact that Mr. Mott contacted defendant after an internet search for an appropriate drug rehabilitation

facility.  *See* Docket No. 30 at 3, ¶ 12.  Thus, the Court is unpersuaded by defendant's argument that defendant's website is only likely to be viewed by people specifically seeking out Narconon treatment.  *See* Docket No. 49 at 6.  Rather, the complaint contains sufficient facts to infer that the alleged misrepresentations on defendant's website have significant potential to impact members of the general public searching the internet for drug rehabilitation programs.[7]

Defendant argues that, because Ms. Mott was not herself exposed to the alleged misrepresentations, plaintiffs fail to establish that the alleged misrepresentations caused Ms. Mott's injuries.  Docket No. 34 at 8.[8]  The Court disagrees.  Plaintiffs' theory of causation is that, but for Mr. Mott's exposure to the alleged misrepresentations, Ms. Mott would not have attended defendant's rehabilitation program and would not have suffered injuries as a result.  Docket No. 47 at 13.  Ms. Mott's injury occurred as a result of Mr. Mott's reliance on defendant's statements, which is the type of injury the CCPA is designed to protect against and plaintiffs' "proposed causation chain is not too attenuated" so as to render Ms. Mott's CCPA claim implausible.  *See Crowe*, 126 P.3d at 210.

Defendant argues that, because the term "consumer" is defined under the CCPA as "a person who has been exposed to defendant's violations," Ms. Mott is not a consumer and cannot recover under the CCPA.  Docket No. 49 at 7 (quoting *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 973-74 (Colo. 1993)).  However, a

---

[7]The Court need not consider plaintiffs' remaining arguments on the public issue element, including those arguments which rely on facts not alleged in the complaint.

[8]Defendant makes no argument with respect to Mr. Mott's injuries.

private right of action under the CCPA is available to "any person" who satisfies all five of the elements for a CCPA claim, regardless of whether that person is a consumer. *Hall*, 969 P.2d at 231, 235 ("We also reject a reading of the phrase ["any person"] that would make "any person" indistinguishable from "any consumer" under the CCPA"). Thus, the fact that Ms. Mott was not directly exposed to the challenged representations does not, as discussed above, foreclose upon the possibility that she is a person entitled to recover under the CCPA. Defendant's argument is therefore without merit.

This aspect of defendant's motion to dismiss is denied.

### E.  RICO

Defendant argues that plaintiffs' RICO claim should be dismissed for failure to state a claim. Docket No. 34 at 8. Plaintiffs respond that they are no longer pursuing a RICO claim against defendant. Docket No. 47 at 2. As a result, plaintiff's RICO claim will be dismissed.

### IV.  CONCLUSION[9]

For the foregoing reasons, it is

**ORDERED** that defendant's Motion to Dismiss the First, Fifth, Seventh and Eighth Causes of Action in Plaintiffs' Section Amended Complaint [Docket No. 34] is **GRANTED** in part and **DENIED** in part as indicated in this order. It is further

**ORDERED** that plaintiffs' claims for intentional infliction of emotional distress, for

---

[9] Plaintiffs do not appear to request leave to amend their complaint, nor do plaintiffs provide any basis upon which to conclude that the identified deficiencies in their claims for intentional infliction of emotional distress and negligent infliction of emotional distress could be corrected by amendment. *See Forman v. Davis*, 371 U.S. 178, 188 (1962) (noting that denying leave to amend is justified if proposed amendments would be futile).

negligent infliction of emotional distress, and for violation of the RICO statute are

**DISMISSED**.

DATED March 17, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge